David R. Edgren
Edgren Law Offices, LLC
645 G Street, Suite 300
Anchorage, Alaska  99654
(907) 272-3325

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA
## ANCHORAGE DIVISION

| | |
|---|---|
| G. D. FRESH DISTRIBUTION, INC., an Oregon corporation,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>ALASKA FRESH CUT, INC., an Alaska corporation<br><br>　　　　　　　Defendant. | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Case No. 3:04-CV-0275-RRB

### STATEMENT OF UNCONTESTED FACTS

This case comes before the court as the result of Plaintiff G. D. Fresh Distribution, Inc., an Oregon corporation, (hereinafter, "G. D. FRESH") seeking to have enforced against Defendant Alaska Fresh Cut, Inc., an Alaska corporation, and its officers and directors on and after July 13, 2004 (hereinafter collectively, "FRESH CUT") certain trust provisions under the Perishable Agricultural Commodities Act of 1930[1] ("PACA").  The PACA creates a trust obligation on the part of FRESH CUT with respect to monies owed to G. D. FRESH for the orders shipped after July 13,

---

[1]　　7 U.S.C. §§ 499a-499t.

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT -- PAGE 1 OF 8**

2004, as none of such were paid for[2]. The officers and directors of FRESH CUT on and after July 13, 2004, as they were in a position to control PACA trust assets, have individual and personal liability to G. D. FRESH[3].

The following facts of the case are drawn from the complaint filed by G. D. FRESH in the litigation and from other pleadings and affidavits submitted by G. D. FRESH. It is noted that FRESH CUT, while it has appeared, has never substantively disputed any assertion in any filing by G. D. Fresh in the matter. G. D. FRESH is a company incorporated under the laws of the State of Oregon engaged in the wholesaling, among others, of fresh fruits and vegetables. Approximately four years ago, G. D. FRESH began selling and shipping fresh fruits and vegetables from California and Oregon to FRESH CUT, which was then a company engaged in the processing and regional wholesaling of those commodities in the Anchorage, Alaska market area. The terms G. D. FRESH had with FRESH CUT over the years have been payment within 21 days of the date of the order, F.A.S. American Fast Freight dock, Tacoma, Washington.

---

[2] 7 U.S.C. § 499e(c). G. D. FRESH, as seller of the commodities involved, retains a trust claim over the commodities shipped to FRESH CUT, all inventories of food or other products derived from these commodities by FRESH CUT, and any of FRESH CUT's receivables or proceeds from the sale of the commodities until full payment is received. 7 U.S.C. § 499e(c)(4).

[3] Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997).

Through the end of 2003, FRESH CUT generally met G. D. FRESH's payment terms, as aforesaid, but was occasionally a "slow pay" account. Over the years, G. D. FRESH did an average of $40,000-50,000 in monthly business with FRESH CUT. Based on their respective areas of business, as just described, both G. D. FRESH and FRESH CUT fall under the provisions of PACA. G. D. FRESH at all times has complied with the requirements of PACA in dealing with FRESH CUT, and in particular with the specific requirements for notice and demand established under that law.

In early 2004, FRESH CUT began to take a longer and longer time to pay outstanding invoices, and FRESH CUT's checks written to G. D. FRESH also began to bounce. G. D. FRESH, and in particular its president and chief executive officer George Dziak ("DZIAK"), was in frequent communication concerning this situation with one George Wilcox ("WILCOX"). WILCOX, on information and belief, was at that time FRESH CUT's comptroller and was the person responsible for FRESH CUT's financial dealings with G. D. FRESH. WILCOX assured DZIAK on a number of occasions that FRESH CUT had "plenty of money" to honor its obligations to G. D. FRESH.

An arrangement was reached through WILCOX in the spring of 2004 whereby FRESH CUT would send two payments each week against current purchases along with a third payment to be applied to past due invoices. These arrangements allowed all invoices for shipments by G. D. FRESH of fresh fruits and vegetables to FRESH CUT up to July

13, 2004, to be satisfied.  In or about July, 2004, WILCOX left his position with FRESH CUT as comptroller, but continued on as an advisor to the company.  DZIAK continued, after this change, to deal with WILCOX concerning payment for sales by G. D. FRESH to FRESH CUT, as well as with one Michelle Williams ("WILLIAMS"), who became Fresh Cut's comptroller after WILCOX left the position.  WILCOX informed DZIAK that WILCOX continued to have authority to speak for FRESH CUT.

    Commencing with shipments to FRESH CUT evidenced by invoices 4333 and 4333A dated July 13, 2004, G. D. FRESH received no further payments from FRESH CUT, and these and subsequent invoices 4345, 4345A, 4356, 4356A, 4364, 4364A, 4376, 4376A, 4391, 4391A, 4404, and 4404A remain unpaid as of the date of filing by G. D. FRESH of its complaint.  These invoices are Attachment "1" to the affidavit of DZIAK filed in support of his 2005 motion for a temporary restraining order and injunctive relief in the case.  Based on continued promises by WILCOX and WILLIAMS that FRESH CUT would pay, G. D. FRESH continued to send fresh fruit and vegetables to FRESH CUT through September 1, 2004.   On about September 1, 2004, G. D. FRESH, based on none of the promises made by WILCOX or WILLIAMS on FRESH CUT's behalf having been honored, notified FRESH CUT that no further shipments would be forthcoming.  G. D. FRESH also notified FRESH CUT at that time on October 13, 2004, in the form of the

written demand required under PACA that $40,141.38 was due and immediately payable in connection with the aforesaid invoices.  <u>See</u> Exhibit "1" attached hereto.

In mid-September, 2004, DZIAK spoke with Mark Sines ("SINES"), who on information and belief is a principal in FRESH CUT.  SINES informed DZIAK that a certain D. Faulk ("FAULK") was in the process of withdrawing from involvement in FRESH CUT and that he (SIMES) would be in future charge of the company.  Around October 1, 2004, DZIAK and G. D. FRESH received a letter from SINES acknowledging FRESH CUT's obligation to G. D. FRESH in connection with some, but not all, of the aforesaid invoices.  This letter is Attachment "2" to the affidavit of DZIAK filed in support of G. D. Fresh's motion for a temporary restraining order and injunctive relief.  The letter contained SINES' admission that FRESH CUT owed G. D. FRESH $34,220.83.  It also referenced FRESH CUT's problems in connection with the bankruptcy of Burger King Alaska, who SINES claimed was one of FRESH CUT's "major customers."  SINES also said in the letter that other customers were "paying slowly."

After receiving the aforesaid letter, G. D. FRESH, despite continued efforts to be in contact, did not have any further contact with SINES, WILCOX, WILLIAMS or otherwise with FRESH CUT.  In mid-October, 2004, G. D. FRESH retained attorneys in Alaska to make inquiries and present to FRESH CUT a written demand for payment, which was done by letter dated October 13, 2004.  This letter is Attachment "3" to the affidavit of

DZIAK filed in support of the motion for a temporary restraining order and injunctive relief. On an unknown date prior to October 13, 2004, FRESH CUT's processing plant and offices 8240 King Street, Anchorage, were gated and padlocked and remain in that condition as of today's date. The 8240 Sandlewood Place, Suite 202, premises listed by the State of Alaska as being the registered offices of FRESH CUT were found, as of October 13, 2004, to be occupied by another business. The whereabouts of SINES, WILCOX, WILLIAMS, FAULK, of FRESH CUT's registered offices, and of its other officers and directors are unknown to G. D. FRESH from around that date through the current time. G. D. FRESH in early 2005 obtained an order from the court enjoining FRESH CUT from doing anything other than preserving the funds and other assets that are or result from its trust held for the benefit of G. D. FRESH under PACA. FRESH CUT was also ordered to provide G. D. FRESH information concerning these funds and other assets, but has failed at all times since to do so.

## APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The trial court's threshold task is to determine whether there are any genuine issues of material fact. Lopez v. Smith, 203 F.3d

1122, 1131 (9th Cir. 2000). In doing so, the court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation marks omitted). Thus, "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). If the trial court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## ARGUMENT

The material facts in this case are established by the G. D. FRESH's invoices to FRESH CUT documenting shipments of fresh fruits and produce to the latter company on and after July 13, 2004, and by the _____, 2004, written demand for payment under PACA. These give rise to FRESH CUT's absolute liability to G. D. FRESH under

PACA, to include that of FRESH CUT's officers and directors at the time, who stand in the nature of fiduciaries as to G. D. FRESH with respect to the trust obligation that arises under that law following the making of that demand. Because there are no material facts to the contrary in this case, and because G. D. FRESH is otherwise entitled to judgment against G. D. FRESH as a matter of law, the court is asked to enter summary judgment against FRESH CUT, to include jointly and severally as against any individual person who served as an officer or director of FRESH CUT on or after July 13, 2004.

DATED at Anchorage, Alaska, this 16th day of July, 2007.

EDGREN LAW OFFICES, LLC

By: ___/s/_____
David R. Edgren
Alaska Bar No. 9406058

**CERTIFICATION OF TYPEFACE AND FONT SIZE**

```
I CERTIFY THAT the foregoing document is
prepared in Times New Roman typeface with a 13
point type size.

7/1607           /s/_____
Date             D. Edgren, Atty.
```